UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL J. HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 05 C 2680 |
| ) | |
| THE CITY OF CHICAGO, ) | Judge George M. Marovich |
| ROBERT FLYNN, EDWARD LERACZ, ) | |
| and UNKNOWN OFFICERS AND AGENTS ) | |
| OF THE CITY OF CHICAGO POLICE ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Harrison filed a three-count amended complaint against defendants City of Chicago, Robert Flynn ("Flynn"), Edward Leracz ("Leracz") and unknown officers and agents of the Chicago Police Department.[1] The City of Chicago has filed a motion for summary judgment with respect to plaintiff's claims against it. Defendants Leracz and Flynn have filed a joint motion for summary judgment as to plaintiff's claims against them. For the reasons set forth below, the Court grants in part and denies in part defendants' motions.

**I.  Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly.

---

[1] Plaintiff has not included any allegations against the unknown officers and agents. In any event, there is no evidence that such individuals were ever served. Because more than 120 days have passed since plaintiff filed his amended complaint, the Court hereby dismisses without prejudice all of plaintiff's claims against the unknown officers and agents. *See* Fed.R.Civ.P. 4(m).

Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. The Court enforces Local Rule 56.1 with respect to both parties regardless of whether either party moves to strike non-complying portions, because the purpose of the rule is to make the *Court's* job manageable, not to give litigants additional ammunition to use against one another.

Unless otherwise noted, the following facts are undisputed as to all parties.

Plaintiff Harrison is an Asian-American man of Filipino descent. He commenced his employment with the City of Chicago as a probationary police officer on or about October 27, 2003. By the end of January 2004, the City of Chicago had discharged him.

Before becoming a probationary employee, Harrison filled out a lot of paperwork. Among other things, Harrison signed a document entitled "Special Attention & Notification." That document stated that "candidates must complete a Personal History Questionnaire and other forms answering all questions accurately and truthfully." The document also stated that pursuant to "Municipal Code of Chicago 2-74-095, any falsification or omission of information may subject a candidate to disqualification and/or termination."

In addition, Harrison twice filled out a Personal History Questionnaire. On March 12, 2000, the first time Harrison filled out the Personal History Questionnaire, Harrison checked the "No" box in answer to the question, "Do you currently own any weapons?" In fact, as of March 12, 2000, Harrison owned a Heckler & Koch USP firearm, a Heckler & Koch pistol, a Ruger MK-2, a SIG p229, a Benelli shotgun, an Armalite AR 10A4 firearm, a Kahr K firearm and a Colt AR 15A3 rifle. On May 16, 2003, the second time Harrison filled out a Personal History Questionnaire, Harrison again checked the "No" box in answer to the question, "Do you currently own any weapons?" In fact, as of May 16, 2003, Harrison owned a Ruger MK2 firearm and a Sigarms P229.

When Harrison signed the Personal History Questionnaire on May 16, 2003, he also signed a "Chicago Police Department Authorization to Release Information and Waiver." That document stated, among other things:

> I, Dan Harrison, an applicant for a position with the Chicago Police Department (hereinafter "CPD"), understands [sic] that the CPD needs to thoroughly investigate my personal and employment histories to evaluate my qualifications to hold the position for which I have applied. It is in the public's interest that all relevant information concerning my personal and employment histories be disclosed to the CPD.
> \* \* \*
> I consent to your release of any and all public and private information that you may have concerning me for the following:
> \* \* \*
> --any and all records maintained by any criminal justice or corrections agency including incident reports, arrest records, traffic citations and criminal history information

Once he had all of the paperwork filled out, Harrison started as a probationary police officer on October 27, 2003. A highpoint of Harrison's time at the police academy was his becoming class commander of his police academy class. A low point was when Harrison was standing at attention and Flynn, who worked at the police academy, made a "rambling comment"

in which he called Harrison a "sand-nigger" and "Al Qaeda" and told him to "get [his] brown ass moving." The defendants deny that Flynn made those comments.

In any event, at some point while Harrison was a probationary police officer, defendant Leracz, for reasons which are not made clear in the record, began an administrative investigation with respect to Harrison's answers on the Personal History Questionnaire. Leracz contacted two members of the police department's C.A.G.E. team, whose mission it is to combat gun trafficking. The C.A.G.E. team members submitted an inquiry regarding Harrison to the Firearm Transfer Inquiry Program ("F-TIP"). The record is somewhat cryptic as to what information the F-TIP system provides, but it seems to contain names of retailers and dates of sales for firearms purchased by particular individuals who hold Illinois Firearm Owner Identification cards. The C.A.G.E. team learned that Harrison had purchased 23 firearms between July 5, 1992 and November 3, 2003.

On or about January 30, 2004, Harrison received a letter from the City of Chicago Department of Police. The letter stated, among other things, "Investigation has determined that answers provided by you during the course of the hiring process were incomplete and deceptive." Harrison is not the first probationary police officer discharged for making falsehoods on his Personal History Questionnaire. Since 1997, the City of Chicago has discharged every probationary police officer found to have lied on his or her Personal History Questionnaire.

It is not clear from the record who recommended that Harrison be discharged. It is undisputed that only the Superintendent of Police can make the decision to discharge a probationary police officer. It is undisputed that while Flynn was commanding officer of Recruit Training he did not have the authority to discharge a probationary police officer. It is undisputed that while Flynn was commanding officer of Recruit Training, he never recommended that any

recruit be discharged. But the record does not include evidence as to *when* Flynn was commanding officer of Recruit Training or whether he was commanding officer of Recruit Training when Harrison was discharged.

Harrison filed suit in this Court, and defendants have moved for summary judgment.

## II. Summary judgment standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

### A. Harrison's Title VII claim

In Count II, Harrison asserts that the City of Chicago violated Title VII of the Civil Rights Act of 1964 by discriminating against him on the basis of his national origin and/or race when it discharged him from his position as a probationary police officer.

Pursuant to Title VII of the Civil Rights Act of 1964, it "shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual,

or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a).

A plaintiff may establish discrimination in violation of Title VII either by putting forth direct evidence of discrimination or by following the indirect method under *McDonnell Douglas Corp. v. Green.*, 411 U.S. 792, 802 (1973). A statement can be "direct evidence of discriminatory intent where the statement was made around the time of *and* in reference to the adverse employment action." *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004) (emphasis added) (citing *Hunt v. City of Markham*, 219 F.3d 649, 652 (7th Cir. 2000)). In *Olson*, a decision-maker's remark that the plaintiff was undesirable in the business world due to his age was not direct evidence that the plaintiff was discharged due to his age. Such a comment is not direct evidence of discrimination because it is not "an admission by the decision-maker that his actions were based upon the prohibited animus." *Olson*, 387 F.3d at 635 (citing *Cerutti v. BASF*, 349 F.3d 1055, 1061 (7th Cir. 2003)). In this case, plaintiff put forth evidence that Flynn called him a "sand-nigger" and "Al Qaeda" and that Flynn told him to get his "brown ass moving." These comments are distasteful but because Harrison has not put forth any evidence that they were made in connection with a decision to discharge Harrison, they are not direct evidence of discrimination. Accordingly, the Court will consider plaintiff's claim under the indirect method.

Under the indirect method, the plaintiff must first establish a *prima facie* case of discrimination. *See Kriescher v. Fox Hills Golf Resort and Conf. Ctr.*, 384 F.3d 912, 915 (7th Cir. 2004). To make out a *prima facie* case of discrimination, Harrison must put forth evidence

that: (1) he is a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) he was discharged; and (4) similarly-situated individuals not in his protected class were treated more favorably. *Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 900 (7th Cir. 2005). If the plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision." *Rudin v. Lincoln Land Comm. College*, 420 F.3d 712, 724 (7th Cir. 2005). "If the employer does articulate such a reason, then 'the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination.'" *Rudin*, 420 F.3d at 724. "To do this, the employee must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted).

In this case, Harrison fails to make out a *prima facie* case of discrimination. Even if the Court assumes that he has put forth evidence of the first three elements, the record is devoid of evidence that other probationary police officers outside of his protected class were treated more favorably. It is undisputed that Harrison twice answered "No" to the question of whether he owned weapons. It is undisputed that on the dates he answered those questions he owned multiple firearms. It is also undisputed that since 1997, the City of Chicago has discharged *every* probationary employee found to have lied on his or her Personal History Questionnaire. Harrison has also failed to put forth any evidence that the City of Chicago investigated only his

background and not the backgrounds of other probationary police officers. Accordingly, Harrison has failed to put forth any evidence of similarly-situated individuals outside his protected class who were treated more favorably. His Title VII claim fails, and the City of Chicago is entitled to summary judgment on Count II. *Kriescher*, 384 F.3d at 916 ("Identifying similarly situated employees is an essential piece of the prima facie case, and without this evidence Kriescher's claim must fail.").

> **B.** **Harrison's § 1983 claim against Flynn and Leracz**

In Count I, plaintiff asserts a § 1983 claim against defendants Flynn and Leracz. Harrison asserts that Flynn and Leracz violated his Fourth amendment right to privacy. Specifically, Harrison asserts that Flynn and Leracz violated his privacy by making inquiries into his history of purchasing firearms. The undisputed evidence shows that Leracz contacted two members of the police department's C.A.G.E. team, who, in turn, submitted an inquiry regarding Harrison to the Firearm Transfer Inquiry Program ("F-TIP"). The C.A.G.E. team learned that Harrison had purchased 23 firearms between July 5, 1992 and November 3, 2003.

Pursuant to 42 U.S.C. § 1983, individuals have a private right of action for violations of the Fourth Amendment. Liability under § 1983, however, "does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Sheik-Abdi v. McClellon*, 37 F.3d 1240, 1248 (7th Cir. 1994)). Harrison has failed to put forth any evidence that Flynn was involved in any way with the inquiry into Harrison's firearm ownership. Accordingly, Harrison has failed to put forth sufficient evidence from which a reasonable jury could conclude that Flynn caused or

participated in a constitutional deprivation. Flynn is entitled to judgment as a matter of law on Harrison's § 1983 claim.

The Court next considers whether Harrison has put forth sufficient evidence to survive summary judgment with respect to his § 1983 claim against Leracz. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their person, house, papers, and effects, against unreasonable searches and seizures." Const. Amend. IV. Fourth Amendment rights are at issue only if the defendants' conduct infringed "an expectation of privacy that society is prepared to consider reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987).

Here, the issue is whether a police recruit has a reasonable expectation of privacy in records a gun seller is required to keep with respect to the police recruit's prior gun purchases. This Court concludes that the answer is no. The Supreme Court has explained that the gun sellers themselves have no reasonable expectation of privacy in their business such that a search warrant is not required to search their premises or records. *United States v. Biswell*, 406 U.S. 311, 315 (1972) ("close scrutiny of [firearms] traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders."). The Seventh Circuit has described why firearm purchasers have no reasonable expectation of privacy with respect to their firearm purchases. *City of Chi. v. U.S. Dep't of Treasury*, 287 F.3d 628, 637 (7th Cir. 2002) ("the purchase of a firearm is not a private transaction. The Gun Control Act requires that a transaction for the sale of a firearm be recorded and every dealer is required to make business records available to investigation. Again, every purchaser of a firearm is on notice that their name and address must be reported to state and local

authorities and AFT. As a result, there can be no expectation of privacy in the requested names and addresses.") (internal citations omitted), *judg't vacated on other grounds*, 537 U.S. 1229. The Court concludes that a gun purchaser has no reasonable expectation of privacy in the fact of the gun purchase or in the record of such purchase. Because Harrison had no reasonable expectation of privacy with respect to the records of his prior gun purchases, he cannot prevail on his § 1983 claim against Leracz.

Even if Harrison had a reasonable expectation of privacy, he has failed to put forth sufficient evidence from which a reasonable jury could conclude that he has been subjected to a constitutional violation. Only *unreasonable* searches and seizures violate the constitution, and the Court's job is to "balance the invasion of the employee's legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." *O'Connor v. Ortega*, 480 U.S. 709, 719-720 (1987). There, the Court explained that "public employees are entrusted with tremendous responsibility, and the consequences of their misconduct or incompetence to both the agency and the public interest can be severe." Furthermore, consent is generally considered enough to make a search reasonable. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Given the City's interest in making sure that its police officers are honest and given Harrison's written consent, no reasonable jury could conclude that Leracz subjected Harrison to an *unreasonable* search. Leracz is entitled to judgment as a matter of law on Harrison's § 1983 claim.

Both Flynn and Leracz are entitled to summary judgment as to Count I. Accordingly, the Court grants their motion for summary judgment with respect to Count I.

**C.     Plaintiff's claim under the Illinois Constitution**

In Count III, plaintiff asserts that defendants violated Article I, Section 6 of the Illinois Constitution by invading his privacy. A federal court considering a state law claim under its supplemental jurisdiction applies state substantive law. *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). The duty of a federal court applying state substantive law is "to predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). Article I, Section 6 of the Illinois Constitution provides:

> The People shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

Illinois Const. Art. I, § 6.

The problem with plaintiff's claim is that the Court has no reason to think the Illinois Supreme Court would recognize a private right of action under Article I, Section 6 of the Illinois Constitution for this plaintiff. A number of courts have considered this issue and concluded that no private right of action exists. *See Woods v. Clay*, Case No. 01 C 6618, 2005 WL 43239 at *24 (Jan. 10, 2005); *Tidwell v. Teneyuque*, Case No. 00 C 1646, 2001 WL 321052 at *4 (N.D. Ill. March 30, 2001); *Richard v. Lukensmeyer*, Case No. 98 C 6409, 1999 WL 261835 at *4 (N.D. Ill. April 12, 1999); *Ingram v. Jones*, Case No. 95 C 2631, 1995 WL 745849 at *4 (N.D. Ill. Nov. 29, 1995).

The Court, however, need not decide what the Illinois Supreme Court would do in this case. The Court's jurisdiction over Count III is supplemental. Per the usual practice, the Court exercises its discretion to dismiss the state claim without prejudice because it has disposed of the

only claims over which it had subject matter jurisdiction. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").

For these reasons, the Court denies defendants' motions for summary judgment with respect to Count III. The Court dismisses without prejudice Count III.

**IV.** **Conclusion**

For the reasons set forth above, the Court grants in part and denies in part defendants' motions for summary judgment. Defendants Flynn and Leracz are granted summary judgment on Count I. Defendant the City of Chicago is granted summary judgment on Count II. Defendants' motions for summary judgment are denied as to Count III. Count III is dismissed without prejudice. All claims against unknown officers and agents are dismissed without prejudice.

ENTER:

George M. Marovich
United States District Judge

DATED: June 19, 2007